UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------X

DNJ LOGISTIC GROUP, INC.,

Plaintiff,

-against-

DHL EXPRESS (USA), INC. and
ANTHONY N. CATAPANO,

Defendants.

--------------------------------X

MEMORANDUM AND ORDER

Civil Action No.
08-CV-2789(DGT)

Trager, J:

Plaintiff DNJ Logistic Group, Inc. ("DNJ") brings this action against DHL Express (USA), Inc. ("DHL") and Anthony N. Catapano ("Catapano"), DHL's Director of Business Development, for claims surrounding a failed contract between the two shipping companies. Plaintiff originally brought this action in New York Supreme Court. Defendants removed on the ground that federal jurisdiction under 28 U.S.C. § 1332 would exist in this case, but for the fraudulent joinder of defendant Catapano. Plaintiff moved to remand to state court, arguing that Catapano was a proper defendant who defeated diversity. Although the issue of whether diversity jurisdiction existed was originally rendered moot by plaintiff's addition of a federal claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), this claim has since been dismissed. Accordingly, the question

of whether this action – which now consists entirely of state law claims – should be remanded is again before the Court. It is undisputed that although DHL is not a New York resident, both Catapano and DNJ are, such that there is a lack of complete diversity in this case if Catapano is a proper defendant. Thus, the determination of whether this case should be remanded to state court turns upon whether Catapano has been fraudulently joined. For the reasons explained below, it is determined that DNJ has set forth a possible claim against Catapano, and, therefore, this case will be remanded to state court.

## Background

For reasons explained infra, it is the contents of plaintiff's original complaint, as of the time of removal, that must be evaluated to determine whether fraudulent joinder is present. Accordingly, the facts set forth below come from this original complaint ("Orig. Compl.") and, for purposes of this analysis, are presumed to be true.

### (1)

### The Contract

DNJ's original complaint explains that it is a subcontractor for major domestic and international delivery and logistics companies. Orig. Compl. ¶¶ 5-6. In 2007, DNJ began

negotiations with defendant DHL to obtain work as a subcontractor. Id. ¶ 7. DNJ representatives negotiated the contract primarily with Anthony Catapano, DHL's Director of Business Development. Id. ¶¶ 4, 7. These negotiations culminated in a contract signed June 19, 2007, the details of which are not set forth in the complaint. Id. ¶ 10.

Both before and after the contract was signed, Catapano made promises to DNJ of large volumes of business from DHL. Id. ¶ 12. DNJ relied upon these promised volumes in entering into the DHL contract and in cancelling a major contract with a DHL rival, which had grossed DNJ $40,000,000 between 2002 and 2007. Id. ¶¶ 13-15. Specifically, Catapano promised that plaintiff would receive four to five times more revenue with DHL than with its competitor, and that DHL would compete with and take many customers from the priority international program plaintiff was handling for DHL's rival. Id. ¶¶ 15-16. On the basis of these representations, and at DHL's insistence that its vendor be based in Florida, plaintiff's principal[1] also established a residence and set up a shipping location in Florida. Id. ¶ 20.

Performance under the contract apparently began sometime in summer 2007. In August 2007, plaintiff contacted Catapano to express dissatisfaction with the volumes of shipments that had

---

[1] Although the complaint does not identify plaintiff's principal, presumably it is Ralph Nabaavi, President and CEO of DNJ. See Aff. Richard Lawler Supp. Def.'s Mot. Dismiss Ex. A at 4.

been achieved, and Catapano responded that he believed the volumes would substantially increase shortly. Id. ¶ 21. However, the original complaint explains that, in fact, it became clear to DNJ – through conversations with Catapano – that the contract was not a valid DHL vendor agreement, and that "Catapano . . . misrepresented the validity of the Agreement to Plaintiff." Id. ¶ 23. As evidence of the invalidity of the agreement, the original complaint recites that the "vendor #" it was assigned was in actuality the number for another vendor of DHL. Id. ¶ 22.

Based on these facts, the original complaint alleged (1) fraud against Catapano and DHL; (2) vicarious liability against DHL for Catapano's tortious or fraudulent acts; and (3) interference with DNJ's contractual/business relationship with DHL's rival, against Catapano and DHL.

**(2)**

**The Current Action**

Plaintiff first brought this action by filing the above-detailed original complaint in New York Supreme Court on or about June 10, 2008. Defendants responded by removing the case to federal court in July 2008, on the ground that diversity jurisdiction would exist but for plaintiff's fraudulent joinder of Catapano as a defendant. Although plaintiff originally filed

a motion to remand, it later withdrew this motion and instead filed a second amended complaint ("SAC") on September 26, 2008, which contained federal law RICO claims that made federal jurisdiction proper under 28 U.S.C. § 1331. In addition to its RICO claims, DNJ's second amended complaint also set forth state law claims of (1) fraud and deceit; (2) breach of contract; (3) specific performance; (4) fraudulent inducement; (5) respondeat superior; (6) negligent supervision; (7) negligent hiring and retention of employee; (8) punitive damages; (9) interference with business relationship/economic advantage; (10) negligent misrepresentation; and (11) individual liability for breach of contract on the part of Catapano.

Defendants subsequently moved to dismiss all of plaintiff's claims except for its breach of contract claim. Plaintiff's response included a cross-motion for leave to file a third amended complaint, which eliminated some causes of action and added additional facts.

Defendant's motion to dismiss was granted only with respect to plaintiff's RICO claims on February 18, 2010, and plaintiff's cross-motion to amend its RICO claim was denied. See DNJ Logistic Group, Inc. v. DHL Express (USA), Inc., No. CV-08-2789, 2010 WL 625364, at *8 (E.D.N.Y. Feb. 19, 2010) ("DNJ v. DHL I"). Consequently, as DNJ v. DHL I explained, normally this case would have been remanded to state court for consideration of the

state law claims. Id. at *10; see generally 28 U.S.C. § 1367(c)(3). However, remand is impermissible if defendants' original contention, that diversity jurisdiction is present, is correct. The parties were thus directed to brief the issue of whether Catapano was fraudulently joined, which would determine whether diversity jurisdiction exists in this case.

## Discussion

### (1)

### Standards Governing Removal for Fraudulent Joinder

"Generally, a defendant in an action pending in state court may remove that case to federal court only if it could have originally been commenced in federal court on either the basis of federal question jurisdiction or diversity jurisdiction." Citibank, N.A. v. Swiatkoski, 395 F. Supp. 2d 5, 8 (E.D.N.Y. 2005); see also Bounds v. Pine Belt Mental Health Care Res., 593 F.3d 209, 215 (2d Cir. 2010). Removal in this action is premised on diversity of citizenship. Under 28 U.S.C. § 1332, a federal court has subject matter jurisdiction over a claim only when the amount in controversy exceeds $75,000 and the claim is between "citizens of different States." 28 U.S.C. § 1332(a)(1) (2006). It is axiomatic that diversity jurisdiction requires complete diversity between the parties, such that the citizenship of each plaintiff is different from the citizenship

of each defendant. See, e.g., Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 553 (2005).

However, a plaintiff cannot defeat federal diversity jurisdiction simply by joining as defendants "parties with no real connection with the controversy." Pampillonia v. RJR Nabisco, Inc., 138 F.3d 459, 461 (2d Cir. 1998). If a defendant suspects such manipulation, he or she may remove to federal court on the grounds that such defendant has been fraudulently joined. But a party who is attempting to remove a case from state to federal court on the basis of fraudulent joinder faces a "heavy burden." Id. "In order to show that naming a non-diverse defendant is a 'fraudulent joinder' effected to defeat diversity, the defendant must demonstrate, by clear and convincing evidence, either that there has been outright fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court." Id.

Defendants here do not contend that there has been outright fraud, but rather argue that fraudulent joinder is present because there is no possibility that DNJ can state a cause of action against Catapano in state court. In determining whether such a possibility exists, "[a]ll uncertainties in applicable state law are resolved in favor of the plaintiff, and the

complaint is subjected to 'less searching scrutiny than on a motion to dismiss for failure to state a claim.'" Campisi v. Swissport Cargo Servs., LP, 09-CV-1507, 2010 WL 375878, at *2 (E.D.N.Y. Jan. 26, 2010); see also Kuperstein v. Hoffman-Laroche, Inc., 457 F. Supp. 2d 467, 471 (S.D.N.Y. 2006). Thus, "[i]f it can be determined that the complaint would likely survive a motion to dismiss in state court, the inquiry ends and remand is appropriate." Kuperstein, 457 F. Supp. 2d at 471. However, even if there is doubt as to whether a complaint would survive a motion to dismiss in state court, this doubt does not preclude remand. To the contrary, given the heavy burden on a party advocating removal on the ground of fraudulent joinder, it is only in the situation where "state case law or legislation removes all reasonable possibility that the plaintiff would be permitted to litigate the claim" that remand should be denied. Id.

It is clear that a determination of whether a plaintiff may possibly have stated a claim turns on an analysis of the pleadings; however, there is a question as to which pleading standards – New York or federal – should govern. "[C]ourts in this Circuit have referenced both state and federal pleading standards when testing the sufficiency of a plaintiff's pleading" in the fraudulent joinder context. Id. at 471 & n.28 (collecting cases). The more logical choice, though, is to

apply state pleading standards, because "the purpose of a fraudulent joinder analysis is to determine whether a state court might permit a plaintiff to proceed with his claims . . . ." Id. at 471-72. Accordingly, the question for DHL is whether it has shown that DNJ's pleadings against Catapano could not possibly survive in a New York Court under New York's pleading standards.

Having settled on the relevant pleading standard, it must also to be determined which of DNJ's pleadings should be evaluated. DNJ has submitted a motion to amend its complaint for a third time, which is still partially pending, and bases its arguments for remand on this proposed third amended complaint. DHL argues, however, that it is DNJ's second amended complaint that should be evaluated to determine whether or not this case should be remanded.

In fact, the generally accepted practice is to "evaluate a defendant's right to remove a case to federal court at the time the removal notice" was filed, ignoring any later-filed amendments to the complaint. Vera v. Saks & Co., 335 F.3d 109, 116 n.2 (2d Cir. 2003) (per curiam); see also In re Shell Oil Co., 970 F.2d 355, 356 (7th Cir. 1992) ("Because jurisdiction is determined as of the instant of removal, a post-removal affidavit or stipulation is no more effective than a post-removal amendment of the complaint.") (per curiam); MBIA Ins.

Corp. v. Royal Bank of Canada, No. 09-CV-5044, --- F.Supp.2d ----, 2009 WL 6357936, at *10 (S.D.N.Y. Dec. 30, 2009); Deming v. Nationwide Mut. Ins. Co., No. 03-CV-1225, 2004 WL 332741, at *4 (D. Conn. Feb. 14, 2004) ("[I]t is well-settled that the court should analyze the pleadings in effect at the time of removal when undertaking a fraudulent joinder analysis."). This rule exists because otherwise, "disposition of the issue would never be final, but would instead have to be revisited every time the plaintiff sought to amend the complaint to assert a new cause of action against the nondiverse defendant . . . ." Cavallini v. State Farm Mut. Auto Ins. Co., 44 F.3d 256, 264 (5th Cir. 1995). Therefore, "a complaint amended post-removal cannot divest a federal court of jurisdiction." Id.

Although both parties here reference later versions of the complaint, neither party presents any argument as to why this general rule – that it is the initial complaint that must be evaluated in determining fraudulent joinder – should not be followed in the instant case. Therefore, plaintiff's original complaint, and not the additional allegations and more detailed factual assertions contained in its second amended complaint, will be considered in determining whether or not fraudulent joinder exists or remand is proper. However, as explained infra, it ultimately makes no difference which version of the complaint is evaluated, as it is determined that both

plaintiff's original complaint and its second amended complaint set forth possible claims of fraud or fraudulent inducement against Catapano.

**(2)**

**Application of the Fraudulent Joinder Standard**

As set forth above, it must be determined whether defendants have adequately demonstrated that neither of the claims that plaintiff's original complaint asserts against Catapano has any possibility of proceeding in state court. Plaintiff's original complaint sets forth claims of both fraud and interference with contractual or business relationship against Catapano. Because it is determined that plaintiff's fraud claim has a chance of proceeding in state court, whether DNJ's claim of tortious interference is also adequate need not be addressed.

**a. Fraud**

DHL – basing its arguments off of plaintiff's second amended complaint – first argues that plaintiff's fraud claims cannot stand because they are duplicative of its breach of contract claims. However, in its original complaint, plaintiff does not set forth any breach of contract claim against DHL. Instead, the original complaint proceeds on the theory that the contract

entered between DHL and DNJ was never a valid contract but instead was a fraud perpetrated by Catapano. As such, the original complaint's fraud claim does not fail on this ground.

It also cannot be said that plaintiff's fraud claim is clearly substantively deficient. A plaintiff making a fraud claim under New York law must plead: (1) a material misrepresentation of a fact by defendant, (2) defendant's knowledge of its falsity, (3) an intent to induce reliance, (4) justifiable reliance by the plaintiff and (5) damages. Eurycleia Partners, LP v. Seward & Kissel, LLP, 12 N.Y.3d 553, 559, 910 N.E.2d 976, 979, 883 N.Y.S.2d 147, 150 (2009). As discussed supra, New York's pleading standards govern the question of whether or not DNJ's allegations, as set forth in its original complaint, might state a claim for fraud in a New York court. For causes of action based upon fraud, New York rules require that "the circumstances constituting the wrong shall be stated in detail." N.Y. C.P.L.R. § 3016(b) (McKinney's 2010). To satisfy this standard, "the complaint must sufficiently detail the allegedly fraudulent conduct, [although] that requirement should not be confused with unassailable proof of fraud." Pludeman v. N. Leasing Sys., Inc., 10 N.Y.3d 486, 492, 890 N.E.2d 184, 187, 860 N.Y.S.2d 422, 425 (2008). Put otherwise, section 3106 requires the allegation of sufficiently detailed facts "to permit a reasonable inference of the alleged misconduct." Eurycleia Partners, LP v. Seward &

Kissel, LLP, 12 N.Y.3d 553, 559, 910 N.E.2d 976, 979, 883 N.Y.S.2d 147, 150 (2009) (internal quotation marks omitted).

The original complaint's allegations of fraud against Catapano – construed at their broadest – can be summarized as follows. Catapano, acting on behalf of DHL, made promises to plaintiff that DNJ would receive large volumes of business from DHL if it signed on as a subcontractor for a new DHL program. Orig. Compl. ¶ 12. Based on these promises, DHL entered into a contract to become a DNJ subcontractor in June 2007, established a business presence in Florida and gave up its lucrative contract with DHL's rival. Id. ¶¶ 10-15, 19-20. However, the original complaint alleges that, in fact, this contract was a sham perpetrated by Catapano, that plaintiff was never properly entered into DHL's system as a DHL vendor and that the agreement was not a valid DHL contract. See id. ¶ 23. As evidence of the invalidity of the agreement, the original complaint recites that the DHL "vendor #" it was purportedly assigned was in actuality the number for another vendor of DHL. Id. ¶ 22.

These allegations do not set forth a clear-cut cause of action for fraud that would undoubtedly survive a motion to dismiss in New York state court. However, it is not clear that there is "no possibility" that these allegations might satisfy the elements of a New York fraud claim. Cf. Pampillonia, 138 F.3d at 461.

First, plaintiff may have sufficiently pled, under N.Y. C.P.L.R. § 3016(b), that Catapano made a material misrepresentation of fact. Inasmuch as the original complaint rests on a theory that Catapano represented to DNJ that it was entering into a major contract with DHL, but in fact the agreement was not valid, this representation of Catapano's would qualify as a material misrepresentation of fact – and, moreover, one that defendant knew was false.

Next, plaintiff may have adequately pled justifiable reliance. DNJ alleges that Catapano intended for DNJ to rely upon his promise that DNJ was entering into a valid and highly profitable contract with DHL, and that plaintiff justifiably did so in both giving up its contract with DHL's rival and establishing a presence in Florida. Orig. Compl. ¶ 13, 19-20. Whether or not it was reasonable to rely on Catapano's assertions in undertaking each of these actions may be questionable, but it cannot be said that there is no possibility that a New York court might find DNJ has at least alleged justifiable reliance. This is particularly true because New York courts generally treat the issue of whether reliance was justifiable as "a question of fact that is not amenable to summary resolution." Ventur Group, LLC v. Finnerty, 68 A.D.3d 638, 639, 892 N.Y.S.2d 69, 71 (1st Dep't 2009).

Finally, plaintiff's original complaint adequately pleads damages by stating that DNJ lost considerable revenue by cancelling its contract with DHL's rival and spending money to establish a Florida presence.

Accordingly, plaintiff's original complaint sets forth at least a possible allegation of fraud against Catapano. For this reason, an examination of the original complaint does not permit the conclusion that Catapano has been fraudulently joined.

**b. Discrepancies between the Original Complaint and the Second Amended Complaint**

There are, however, some troubling discrepancies between DNJ's original complaint and its second amended complaint that leave the Court wary of looking only to plaintiff's original complaint to determine subject matter jurisdiction. In particular, DNJ's later pleadings seem to back-pedal on its assertions that the DNJ/DHL vendor agreement was not a valid one. Indeed, plaintiff's second amended complaint adds a breach of contract claim against DHL and bases its claims of fraud and fraudulent inducement on Catapano's unrealistic promises of volume rather than on a theory that the contract was never valid. However, an examination of the pleadings contained in plaintiff's second amended complaint demonstrates that even if the fraudulent

joinder analysis were based on this later pleading, remand would still be the appropriate course.

Plaintiff's second amended complaint, again construed broadly, alleges the following with respect to a claim of fraud against Catapano. Catapano, acting on behalf of DHL, made promises to plaintiff, beginning in May 2007, that if plaintiff became a sub-contractor for DHL as part of its new priority overnight program, plaintiff would be given a substantial volume of overseas shipments beginning in summer 2007. Indeed, plaintiff was promised that the volume of shipments it would handle under a contract with DHL would be substantially greater than the shipments DNJ had previously been handling for DHL's rival. See SAC ¶ 21. Specifically, the second amended complaint recites the following statements that Catapano made to DNJ before the contract was entered:

1) May 31, 2007, Catapano to plaintiff's representatives: Plaintiff would be handling "a large volume; much larger than the volume of [DHL's competitor]." Id. ¶ 21 (alteration in original).

2) June 4, 2007, Catapano to DNJ employees: "[T]he start date will happen very soon." Id. ¶ 22.

3) June 16, Catapano to DNJ employees: The agreement was "already in the [DHL] system." Id. ¶ 17.

Plaintiff's theory in its second amended complaint is that Catapano made these promises to DNJ despite knowing that these estimates of volume and start dates were wildly optimistic to

the point of being false, and thereby induced plaintiff to enter into the contract with DHL, establish a presence in Florida and abandon its contract with DHL's competitor. SAC ¶¶ 32-33. Plaintiff also maintains its allegations regarding the improper "vendor #" and – although not repeating its allegations that the agreement was never valid – asserts that DNJ was, at a minimum, never properly entered into DHL's system. Id. ¶¶ 35-36.

DHL argues that plaintiff's claim of fraud, as pled in its second amended complaint, cannot stand because it is duplicative of its breach of contract claim. However, the second amended complaint also alleges a claim of fraudulent inducement to enter into the contract, and New York permits such claims to stand alongside a claim for breach of contract. See First Bank of the Ams. v. Motor Car Funding, Inc., 257 A.D.2d 287, 291-92, 690 N.Y.S.2d 17, 21 (1st Dep't 1999) ("[I]f a plaintiff alleges that it was induced to enter into a transaction because a defendant misrepresented material facts, the plaintiff has stated a claim for fraud even though the same circumstances also give rise to the plaintiff's breach of contract claim."); see also Deerfield Commc'ns Corp. v. Chesebrough-Ponds, Inc., 68 N.Y.2d 954, 956, 502 N.E.2d 1003, 1004 (1986). A plaintiff making a fraudulent inducement claim under New York law must plead: (1) the misrepresentation of a material fact; (2) known by the defendant to be false and intended to be relied upon when made; and (3)

justifiable reliance and resulting injury. Braddock v. Braddock, 60 A.D.3d 84, 86, 871 N.Y.S.2d 68, 70 (1st Dep't 2009) (citing Gaidon v. Guardian Life Ins. Co. of America, 94 N.Y.2d 330, 351, 725 N.E.2d 598, 608, 704 N.Y.S.2d 177, 187 (1999)).

Although the second amended complaint's theory of fraudulent inducement again does not set forth flawless claim, it might – like the original complaint – possibly be considered adequate by a New York court. The second amended complaint alleges in detail promises made by Catapano about volume expectations and DNJ's place in the DHL system before the contract was entered. See SAC ¶ 21. This second statement, that DNJ was already in DHL's system, has been adequately alleged to be a misrepresentation of fact. Although it is not clear that it was a material misrepresentation – i.e., that it induced DNJ to enter the contract – materiality is typically treated as an issue of fact in New York courts. Texaco Inc. v. Synergy Group Inc., 171 A.D.2d 788, 789, 567 N.Y.S.2d 509, 510 (2d Dep't 1991).

Even if Catapano's statement about DNJ already being in DHL's system were determined to be immaterial, Catapano's alleged promise of large volumes might also be considered by a New York court to be an adequately alleged material misrepresentation. A promise of future volume expectations can only qualify as a material misrepresentation if it was made "with a present, but

undisclosed intent not to perform . . . ." Schulman v. Greenwich Assocs., 52 A.D.3d 234, 234, 859 N.Y.S.2d 421, 422-23 (1st Dep't 2008); see also Pentony v. Saxe, 2 A.D.3d 1076, 1077, 769 N.Y.S.2d 636, 638 (3d Dep't 2003); Laing Logging, Inc. v. Int'l Paper Co., 228 A.D.2d 843, 644 N.Y.S.2d 91 (3d Dep't 1996). At several points the second amended complaint alleges that, at the time he made promises to plaintiff, Catapano knew that the volumes he promised had no chance of materializing. See SAC ¶¶ 46, 72, 83. Although New York law does not permit such conclusory allegations, standing alone, to establish a lack of intent to perform, a plaintiff need only allege some corroborating circumstantial evidence at the pleading stage. Braddock, 60 A.D.3d at 89 ("While an inference that the promisor never intended to fulfill his promise should not be based solely upon the assertion that the promise was not, in fact, fulfilled, we must recognize that a present intention not to fulfill a promise is generally inferred from surrounding circumstances, since people do not ordinarily acknowledge that they are lying." (internal citations omitted)). Moreover, the New York Court of Appeals has recently emphasized that a plaintiff claiming fraud need not detail with any particularity those supporting facts that are exclusively within the defendant's knowledge. See Pludeman, 10 N.Y.3d at 491-92.

Applying these rules to Catapano's alleged misrepresentation of future volume expectations, the second amended complaint might be construed as adequately alleging Catapano's knowledge that the promised volumes would never materialize. First, some leniency in DNJ's pleadings might be allowed because facts showing whether or not Catapano knew that the volumes would not be anything near what he was promising would likely be facts within the defendants' knowledge alone, given that this was a new program being designed and implemented by DHL. Cf. id. Moreover, the second amended complaint includes a few facts that a state court might find lend credence to DNJ's claims that Catapano was intentionally misleading to plaintiff about the volumes expected under the new program.[2] First, the complaint states that plaintiff's DHL "vendor #," which Catapano assigned, actually belonged to another DHL vendor and that DNJ was never put into DHL's system. SAC ¶¶ 35-36. This might point to a

---

[2] DNJ has offered stronger circumstantial evidence that Catapano may have been intentionally misleading in its proposed third amended complaint ("TAC"), which a state court might find persuasive if it were to permit amended pleadings. Specifically, the proposed third amended complaint explains that Catapano insisted on a personal loan of $50,000 from the plaintiff's principal at the same time he was negotiating the contract with plaintiff. TAC ¶ 19. Catapano explained that he would be able to pay the loan back through "his enhanced commissions from the new DHL priority program." Id. Thus, Catapano may have had reason to exaggerate the volumes that would exist under this program in order to ensure plaintiff that he would be capable of paying back this loan, thereby inducing plaintiff to loan him the money.

conclusion that DNJ was never intended to be a major subcontractor of DHL, but was being used for some other purpose by Catapano. On this point, plaintiff has asserted that Catapano obtained from plaintiff its client contact information and that DHL now services many of these former DNJ clients. Id. ¶¶ 31, 37. This suggests a possible ulterior motive for Catapano to induce plaintiff into a contract. Although this evidence is far from conclusive, it is enough to possibly corroborate DNJ's claim that Catapano intentionally overstated anticipated volume.[3]

Furthermore, the second amended complaint may adequately plead justifiable reliance. DHL argues that DNJ cannot establish justifiable reliance on Catapano's promised volumes because the contract specifically contradicts these promises by stating that it does not guarantee any particular shipment volumes. In

[3] In a previous opinion dismissing plaintiff's RICO claim, it was explained that these conclusory allegations and the corroborative details provided did not meet the federal pleading requirements for alleging fraudulent intent. See DNJ v DHL I, 2010 WL 625364 at *8. At first blush, it may seem contradictory to have concluded in an earlier opinion that plaintiff had not met the pleading standards for alleging a federal RICO claim based on wire fraud, but now to find that DNJ's second amended complaint possibly has met New York's pleading requirements for fraudulent inducement. However, it bears reiterating that the standard for finding fraudulent joinder is more stringent than the standard for evaluating a motion to dismiss. Thus, it is entirely consistent to have concluded that the evidence did not satisfy the federal pleading requirements for wire fraud under RICO, but to find that a state court might allow DNJ's fraudulent inducement claim to proceed.

support, it points to a line of cases applying New York law and holding that when "an express provision in a written contract contradicts a prior alleged oral representation in a meaningful fashion," a plaintiff cannot establish reasonable reliance. M.H. Segan Ltd. P'ship v. Hasbro, Inc., 924 F. Supp. 512, 527 (S.D.N.Y. 1996), abrogated on other grounds by Nadel v. Play-By-Play Toys & Novelties, Inc., 208 F.3d 368, 380 n.9 (2d Cir. 2000); see also Bango v. Naughton, 184 A.D.2d 961, 962-63, 584 N.Y.S.2d 942, 944 (3d Dep't 1992).

However, this rule of New York law only clearly extends to those situations where there is a direct contradiction between the express contractual terms and the alleged oral misrepresentation. See Bango, 184 A.D.2d at 963 (finding no reliance by plaintiff on defendant continuing in business, where contract specifically stated that it was contingent on defendant staying in business); Danaan Realty Corp. v. Harris, 5 N.Y.2d 317, 320-21, 57 N.E.2d 597, 599, 184 N.Y.S.2d 599, 602 (1959) (finding no reliance on oral promises regarding maintenance expenses when contract stated explicitly that purchaser was not relying upon any statement or representation about expenses); Old Clinton Corp. v. 502 Old Country Road, LLC, 5 A.D.3d 363, 364-65, 773 N.Y.S.2d 410, 412-13 (2d Dep't 2004) (finding no reliance on an oral promise to build only a 4,600 square foot

structure when contract explicitly stated that a 7,000 square foot structure could be built).

In the present case, however, there is not necessarily a clear contradiction between Catapano's promises and the contract's terms. Although the contract states that it is "not to be considered a guarantee of shipment volumes," Aff. Richard Lawler Supp. Def.'s Mot. Dismiss Ex. A at 1, it does not explicitly state that DNJ disclaims reliance on any previous representations made to it about anticipated volumes. Cf. Danaan, 5 N.Y.2d at 320-21. As such, it is not clear that there is a "meaningful contradiction" between the terms of the contract and Catapano's promised volumes. To the contrary, a New York court might construe Catapano's promises as additional to, but not contradictory to, the contract terms. In that case, a New York court might find that DNJ's second amended complaint adequately alleges justifiable reliance on Catapano's predicted volumes.

The final element of a fraudulent inducement claim – damages – is adequately pled. Plaintiff alleges that Catapano's statements caused it not only to enter the contract with DHL, but also to establish a presence in Florida and to terminate its relationship with DNJ's competitor at great expense to plaintiff.

Accordingly, on the basis of the above analysis, DHL has not met its heavy burden of proving, by clear and convincing evidence, that there is "no possibility" that DHL might be found by some New York court to have stated a colorable claim for fraud or fraudulent inducement against Catapano. This is true whether the original complaint or the second amended complaint is treated as the operative pleading. There are, to be sure, some weak spots in DNJ's pleadings that may leave its claim vulnerable to dismissal in state court. But "[a]ny possibility of recovery, however slim, weighs against a finding of fraudulent joinder and in favor of remand." Winters v. Alza Corp., 690 F. Supp. 2d 350, 353 (S.D.N.Y. 2010); see also Henderson v. Washington Nat. Ins. Co., 454 F.3d 1278, 1283-84 (11th Cir. 2006) (remanding where it was determined that the plaintiff's "patchy allegations may ultimately prove insufficient" but defendant had not shown that there was no possibility that a colorable claim had been asserted).

Having determined that plaintiff might possibly have pled a fraud or fraudulent inducement claim against Catapano under New York law, this case must be remanded. Whether defendants are correct that the additional claims of plaintiff against Catapano are without merit is an issue that can be taken up in state court.

## Conclusion

Because defendants have not shown, by clear and convincing evidence, that Catapano was fraudulently joined, diversity jurisdiction is lacking and this case is remanded to state court.

Dated: Brooklyn, New York
July , 2010

SO ORDERED:

/s/

David G. Trager
United States District Judge